IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION


PRISON LEGAL NEWS, a project of the
HUMAN RIGHTS DEFENSE CENTER,

                 Plaintiff,

     v.

UMATILLA COUNTY; UMATILLA
COUNTY SHERIFF'S OFFICE; JOHN
TRUMBO, individually and in his capacity
as Umatilla County Sheriff; STEWART
HARP, individually and in his capacity as
Umatilla County Jail Commander,
THORNE HEARN, in his individual and
official capacity;

                 Defendants.

Case No.  2:12-cv-01101-SU

FINDINGS AND
RECOMMENDATION


SULLIVAN, Magistrate Judge:

     Prison Legal News ("PLN"), a project of the Human Rights Defense Center ("HRDC"),

filed a lawsuit under 42 U.S.C. § 1983 against Umatilla County, the Umatilla County Sheriff's

Office, Sheriff John Trumbo, County Jail Commander Stewart Harp, and Thorne Hearn

(collectively "defendants").  The case arises out of a challenge to the constitutionality of the

FINDINGS AND RECOMMENDATION – Page 1

county jail's mail policy that restricts all incoming and outgoing inmate personal mail to postcards only. Less than two months after initiating suit, defendants submitted an Offer of Judgment, which PLN accepted. PLN now moves for an award of attorney fees in the amount of $53,168 and costs in the sum of $799.89. For the reasons set forth below, attorney fees should be awarded in the reduced sum of $31,983.80 and costs should be awarded in full.

## FACTUAL BACKGROUND

Defendants operate the county jail in Umatilla County, Oregon. *See* Compl. ¶¶ 3.2-3.6. On February 23, 2010, defendants adopted an inmate mail policy that banned any ingoing or outgoing mail that was not in the form of a postcard (the "Policy"). *Id.* at ¶¶ 4.112-4.113. In 2011, after sending mail to prisoners that was rejected pursuant to the Policy, PLN commenced an investigation into the mail practices of the Umatilla County Jail ("UCJ"). *See* Chamberlain Decl. ¶¶ 16-17. Ultimately, the investigation revealed that UCJ was censoring numerous PLN mailings, as well as correspondences sent by third parties and prisoners. *Id.*; *see also* Compl. ¶¶ 4.4-4.111.

On June 19, 2012, PLN filed the present lawsuit against defendants, alleging that the Policy violated the First and Fourteenth Amendment rights of both senders and recipients by censoring mail that is not in the form of a postcard and by failing to require mail handlers at UCJ to provide notice to inmates and their correspondents when defendants confiscate or return prohibited mail sent to or from inmates.[1] *See* Compl. ¶¶ 5.1-5.8. On July 12, 2012, defendants served PLN with a set of discovery requests. On July 13, 2012, PLN sent defendants a set of

---

[1] On January 16, 2012, PLN commenced a strikingly similar suit in this District against the Columbia County Jail; on May 29, 2012, United States District Court Judge Michael Simon entered a preliminary injunction, enjoining Columbia County Jail's mail policy. *See Prison Legal News v. Columbia Cnty.*, 2012 WL 1936108, *14 (D.Or. May 29, 2012).

FINDINGS AND RECOMMENDATION – Page 2

discovery requests.   On July 31, 2012, defendants filed their Amended Answer to PLN's Complaint.

On August 1, 2012, before responses had been served on either set of discovery requests and prior to any litigation or rulings on the merits of PLN's claims, defendants submitted an Offer of Judgment, which provided for judgment against defendants and damages "in the sum of fifty-one thousand dollars ($51,000), plus costs and plus reasonable fees incurred as of the date of this offer"; after determining that the UCJ had abandoned most of the challenged policies and practices, PLN accepted defendants' offer.  *See* Accepted Offer of Judgment (Aug. 14, 2012); *see also* Pl.'s Mem. in Supp. of Mot. Att'y Fees & Costs 4.   Thereafter, this Court entered judgment in favor of PLN.  *See* Judgment (Oct. 17, 2012).

PLN now moves for attorney fees and costs pursuant to this Court's Judgment and 42 U.S.C. § 1988.   PLN originally employed the services of HRDC's in-house counsel, Lance Weber and Alissa Hull, and HRDC paralegal Zach Phillips.    After the investigation was commenced, PLN also employed the services of attorneys Jesse Wing, Katherine Chamberlain, and Marc Blackman, as well as paralegals Carrie Wilkinson and Kara McBride.  PLN is seeking the following compensation: $18,870 for Chamberlain; $10,400 for Wing; $8,475 for Wilkinson; $6,335 for Weber; $4,329 for McBride; $2,310 for Hull; $1,449 for Phillips; and $1,000 for Blackman.  *See* Chamberlain Decl. ¶ 10.  Therefore, PLN requests $53,168 in fees and $779.89 in costs, totaling $53,947.89.  *Id.* at ¶¶ 10-11; *see also* Pl.'s Mot. Att'y Fees & Costs 2.

## STANDARD OF REVIEW

In an action brought under 42 U.S.C. § 1983, the court may award reasonable attorney fees and costs to any prevailing party other than the United States.  *See* 42 U.S.C. § 1988(b). The court is required to ensure an award's reasonableness, regardless of whether the opposing

FINDINGS AND RECOMMENDATION – Page 3

party objected to it. *Gates v. Deukmejian*, 987 F.2d 1392, 1400-02 (9th Cir. 1992). As such, "the reasonable fee, as calculated by the district court, may fall short of the actual fee that the plaintiff's lawyer charges." *Corder v. Gates*, 947 F.2d 374, 378 n.3 (9th Cir. 1991) (citation and internal quotations omitted).

The Ninth Circuit has adopted a "lodestar" method to assess the amount of reasonable attorney fees. *See Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (as amended). This method multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* After calculating the lodestar amount, the court must also consider whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of twelve factors, which include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases.

*Id.* (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951 (1976)). Because the lodestar amount is a "presumptively accurate measure of reasonable fees," the court should only adjust it in "rare circumstances." *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). Further, the court possesses "considerable discretion . . . in determining what attorney's fee is reasonable." *Webb v. Ada Cnty.*, *Idaho*, 195 F.3d 524, 526-27 (9th Cir. 1999), *cert. denied*, 537 U.S. 948 (2002).

**DISCUSSION**

As preliminary matter, defendants seek discovery regarding PLN's attorney fee petition. In addition, defendants assert that PLN's requested hourly rates are excessive and that the time PLN "spent on this case exceeded its significance, complexity and the results obtained."[2]  Defs.' Resp. to Mot. Att'y Fees & Costs 8.

I.      Discovery Regarding PLN's Attorney Fee Petition

By letter to the Court, defendants requested discovery concerning fees that PLN or HRDC were awarded in similar cases.  "A request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Accordingly, in the context of an attorney fee petition, "[b]road discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Goehring v. Brophy*, 94 F.3d 1294, 1305 (9th Cir. 1996), *cert. denied*, 520 U.S. 1156 (1997), *overruled on other grounds by City of Boerne v. P.F. Flores*, 521 U.S. 507 (1997) (citation and internal quotations omitted).

Defendants' request is denied for two reasons.  First, defendants' counsel concedes that they have previously litigated against PLN in at least one case involving attorney fees; further, online resources, including but not limited to Westlaw, contain information regarding the fees awarded in analogous cases.  PLN also provided a list of cases that it has litigated and the amount of attorney fees obtained therein.  *See* Pl.'s Mem. in Supp. of Mot. Att'y Fees & Costs 9-

---

[2] However, beyond providing general objections to PLN's fee petition, defendants neither identify a single billing entry that should be stricken nor argue for a specific percentage reduction.  *See generally* Defs.' Resp. to Mot. Att'y Fees & Costs.

FINDINGS AND RECOMMENDATION – Page 5

10.   Thus, as I explained at the status conference, formal discovery is not required in order for defendants to obtain the information they seek.   *See* Status Conference (Nov. 29, 2012). Additionally, while not dispositive, I question the relevancy of the information at issue.   The Court has an independent duty to ensure the reasonableness of the award requested; this is a fact specific inquiry that depends on a number of factors.   Therefore, the fees that PLN sought and obtained in a different matter is not determinative of any issue, unless the Court resolves that the presumptively reasonable amount generated by the lodestar method warrants an adjustment.   *See Morales*, 96 F.3d at 363.

Second, despite being given the opportunity to do so, defendants have not cited to any relevant authority regarding discovery in the context of an attorney fee petition.   Defendants rely solely on out-of-circuit cases in support of their argument that post-judgment discovery should be allowed; however, these cases are not binding on this Court.   Further, the cases cited by defendants are all distinguishable because the legal issues implicated by those fee petitions are distinct from the issues presented here.   Moreover, the requests for discovery in those cases were narrowly tailored, whereas here, defendants' request is broad.   More importantly, the Court is not aware of any authority that provides for discovery regarding attorney fees where the supporting documentation is not inadequate.   *See Sablan v. Dep't of Fin. of the Commonwealth of N. Mariana Islands*, 856 F.2d 1317, 1321-22 (9th Cir. 1988); *Chow v. Meissner*, 1999 WL 459554, *4 (9th Cir. July 2, 1999) (Table); *see also Martinez v. Schock Transfer & Warehouse Co., Inc.*, 789 F.2d 848, 849-50 (10th Cir. 1986).   Because PLN's filings regarding attorney fees are sufficient to evaluate what constitutes a reasonable award, defendants' request for discovery should be denied.

FINDINGS AND RECOMMENDATION – Page 6

II.    <u>Attorney Fees</u>

It is undisputed that PLN is the prevailing party and is therefore entitled to fees. *See* Judgment 2; *see also* 42 U.S.C. § 1988. Accordingly, the sole issue before this Court is the reasonableness of the requested rates and hours incurred as of August 1, 2012, the date of defendants' Offer of Judgment.

A.    <u>Reasonableness of the Requested Rates</u>

PLN seeks the following hourly rates: $400 for Wing, who has over 20 years of experience; $400 for Blackman, who has over 30 years of experience; $350 for Weber, who has 15 years of experience; $300 for Chamberlain, who has eight years of experience; $210 for Hull, who has two years of experience; $125 for Wilkinson, a paralegal; $105 for Phillips, a paralegal; and $90 for McBride, a paralegal. *See* Chamberlain Decl. ¶¶ 2, 10; Wing Decl. ¶ 1; Blackman Decl. ¶ 2; Weber Decl. ¶¶ 3, 8.

A reasonable rate for legal services is "calculated according to the prevailing market rates in the relevant community." *McElmurry v. U.S. Bank Nat'l Ass'n,* 2008 WL 1925119, *3 (D.Or. Apr. 30, 2008) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 (1984)). This District considers the most recent Oregon State Bar Economic Survey ("OSB Survey") as its "initial benchmark" in determining whether hourly billing rates are reasonable. *See, e.g.*, *Knowledge Learning Corp. v. Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa.*, 2011 WL 2133824, *4-5 (D.Or. Apr. 18), *adopted by* 2011 WL 2115631 (D.Or. May 27, 2011); *see also* LR 54-3. If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate. *Copeland-Turner v. Wells Fargo Bank, N.A.*, 2012 WL 92957, *2 (D.Or. Jan. 11, 2012). Even when such justification is present, the court usually limits the hourly rate to the

FINDINGS AND RECOMMENDATION – Page 7

75th percentile of the OSB Survey.  *McElmurry,* 2008 WL 1925119 at *3; *Knowledge Learning Corp.*, 2011 WL 2133824 at *5.

As an initial matter, defendants argue that the "relevant community" for the purposes of determining a reasonable hourly rate is Eastern Oregon because that is where the underlying action was litigated and it "must be presumed that any one of [local attorneys practicing business and plaintiff non-personal injury litigation] could try a civil rights claim."  Defs.' Resp. to Mot. Att'y Fees & Costs 4.  Conversely, PLN argues that Portland rates should serve "as the 'initial benchmark' in this case because few, if any, attorneys in Eastern Oregon practice civil rights litigation."  Pl.'s Reply to Mot. Att'y Fees & Costs 2.

"The general rule is that the relevant community for purposes of the prevailing rate is the forum in which the district court sits."  *Marquez v. Harper Sch. Dist. No. 66*, 2012 WL 2469545, *3 (D.Or. June 26, 2012) (citing *Davis v. Mason Cnty.*, 927 F.2d 1473, 1488 (9th Cir. 1991) (superseded by statute on other grounds)).  Nonetheless, rates outside the forum may be used "if local counsel was unavailable, either because they were unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle the case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation and internal quotations omitted).  Here, while somewhat limited, the Court accepts PLN's evidence that it was unable to secure adequate counsel in Eastern Oregon.  *See* Sullivan Decl. ¶ 19; Hinkle Decl. ¶ 10.  Accordingly, the Court uses Portland as the relevant community for determining the prevailing market rate.  *See, e.g., Marquez*, 2012 WL 2469545 at *3-4 (applying the Portland region's rate in an analogous circumstance); *Hamrick v. Aqua Glass, Inc.*, 2010 WL 935478, *4 (D.Or. Mar. 12, 2010) (same).

FINDINGS AND RECOMMENDATION – Page 8

Turning now to the issue of whether PLN's requested hourly rates are reasonable, the latest OSB Survey, issued in 2012, provides billing rates by locality, years of experience, and area of practice. *See generally* OSB Survey; *see also Copeland-Turner*, 2012 WL 92957 at *2. The relevant hourly rates for the Portland region are as follows:

| Years of Experience | Average | Median | 75th Percentile |
|---|---|---|---|
| Over 30 Years | $340 | $350 | $400 |
| Over 20 Years | $326 | $333 | $399 |
| 15 Years | $312 | $300 | $379 |
| Eight Years | $258 | $250 | $295 |
| Three Years or Less | $182 | $175 | $198 |

*See* OSB Survey 29-30. In addition, for Portland lawyers specializing in "Civil Litigation, Plaintiff (excludes Personal Injury)," the average rate is $266 per hour, the median rate is $250 per hour, and the 75th percentile is $300 per hour. *Id.* at 32.

Thus, the rates that PLN seeks are significantly higher than average for attorneys in their field with commensurate experience; in some instances, PLN rates exceed the 75th percentile. In order to justify these higher rates, PLN submitted declarations from their own attorneys, expounding upon their expertise in the area of prisoners' rights, which the OSB Survey fails to specifically take into account. *See generally* Chamberlain Decl.; Blackman Decl.; Weber Decl.; Wing Decl; *see also* Pl.'s Mem. in Supp. of Mot. Att'y Fees & Costs 8-9. Moreover, PLN argues that higher rates are justified because prisoners' rights cases are unpopular and important, as well as risky, because they are only undertaken on a contingent fee basis. *Id.* In addition, PLN submitted eight declarations by other attorneys, who opine that counsels' hourly rates are appropriate given their skill level, the result obtained, the complexity of the case, and the comparable rates of similarly specialized attorneys with equivalent experience. *See generally*

FINDINGS AND RECOMMENDATION – Page 9

Markowitz Decl.; Sullivan Decl.; Hinkle Decl.; Bernick Decl.; Lynch Decl.; Meyer Decl.; Skerritt Decl.; Wilson Decl.

Despite this evidence, the Court finds that PLN failed to adequately justify their increased rates. I recognize that Chamberlain and Weber have significant experience in the realm of prisoners' rights litigation, a specialized area of the law. Nonetheless, because this case pended on the docket for less than two months and the parties had not yet begun litigating the substantive merits of the underlying lawsuit, the Court is skeptical of the justification for the enhanced rate. At the time it settled, the posture of this case was relatively straightforward. The only substantive filing from PLN was their complaint, which the Court notes was nearly identical to the complaint filed six months earlier in *Prison Legal News v. Columbia Cnty.*[3] Moreover, the standard for alleging a viable claim for relief, and therefore for surviving a motion to dismiss, is low. *See* Fed. R .Civ. P. 8; Fed. R. Civ. P. 12(b)(6); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face"). In addition, the parties only engaged in minimal discovery; at the time the Offer of Judgment was made, both parties had merely served their first requests for production and no depositions had taken place.

The Court is also unpersuaded that higher rates are merited because this case was a civil rights action undertaken on a contingency fee basis. I acknowledge the importance of encouraging civil rights lawyers to take on such cases. Further, PLN is correct that this case could have lasted several years, thereby delaying counsels' compensation for fees. Nevertheless,

---

[3] A side-by-side comparison of the two complaints reveals that they are virtually identical except for the factual allegations specific to each county jail. In addition, both complaints are signed by Chamberlain.

FINDINGS AND RECOMMENDATION – Page 10

the fact of the matter is that this case settled in less than two months.  In other words, because this case was resolved in its early stages, before any litigation on the merits or significant discovery, the specialization and experience of, and risk to, PLN's counsel is not a considerable factor.

As a result, the Court finds that higher-than-average rates are not justified or reasonable here.  *See, e.g., Knowledge Learning Corp.*, 2001 WL 213382 at *5 (awarding the median rate to specialized litigators where the case was insufficiently complex to "justi[fy] the highest end of hourly rates"); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1115-16 (9th Cir. 2008) ("[t]he district court may properly use the simplicity of a given task . . . as justification for a reduction in the overall rate").  Therefore, the Court recommends awarding PLN's counsel the higher of the average or median rate for their respective levels of experience, as set forth in the 2012 OSB Survey, for the purposes of calculating the lodestar amount.  Accordingly, Blackman should be compensated at the rate of $350 per hour, Wing should be compensated at the rate of $333 per hour, Weber should be compensated at the rate of $312 per hour, Chamberlain should be compensated at the rate of $258 per hour, and Hull should be compensated at the rate of $182 per hour.

Finally, PLN requests an hourly rate of $125 for paralegal Wilkinson, $105 for paralegal Phillips, and $90 for paralegal McBride.  Although the OSB Survey does not include data on paralegal rates, this District has found such rates reasonable where they do not exceed the average rate for a first-year associate.  *See Knowledge Learning Corp.*, 2011 WL 2133824 at *6; *Old W. Fed. Credit Union v. Skillman*, 2012 WL 4594256, *4 (D.Or. Sept.  6), *adopted by* 2012 WL 4590080 (D.Or. Oct. 1, 2012).  Here, defendants do not object to the hourly rates requested by PLN's paralegals.  More importantly, because all three paralegals in this case are charging

FINDINGS AND RECOMMENDATION – Page 11

significantly less than the average rate for a first-year associate in Portland, the Court recommends awarding Wilkinson, Phillips, and McBride the requested rates.

      B.     <u>Reasonableness of the Hours Expended</u>

PLN requests an award of fees for 250.2 hours of work undertaken by five attorneys and three paralegals. Specifically, PLN seeks compensation for the following hours: 62.9 for Chamberlain, 26 for Wing, 18.1 for Weber, 11 for Hull, 2.5 for Blackman, 67.8 for Wilkinson, 48.1 for McBride, and 13.8 for Phillips. As discussed above, at the time the Offer of Judgment was accepted, this suit was not overly complicated, there was no litigation on the merits, and only minimal discovery had taken place. The Court finds that the hours requested are, for the most part, reasonable given the novelty of the issue presented.

Nonetheless, even where, as here, the expended time is reasonable, the court may still reduce the fee award for defects in the plaintiff's motion for fees. Notably, the numbers of hours expended must not only be reasonable, but also adequately documented. *See Sterling Savings Bank v. Sequoia Crossing, LLC*, 2010 WL 3210855, *5-6 (D.Or. Aug. 11, 2010). In addition, "[t]his District has specifically cautioned against block billing and providing vague or otherwise inadequate descriptions of tasks because these practices greatly hinder the court's ability to assess the reasonableness of the time expended." *Old W. Fed. Credit Union*, 2012 WL 4594256 at *4 (citation omitted). Duplicative billing is another common defect that can result in an award reduction. *Id.* (citing *Sterling Savings Bank*, 2010 WL 3210855 at *5; and *Whitworth v. Nat'l Enter. Sys.*, 2010 WL 1924505, *6 (D.Or. Apr. 21), *adopted by* 2010 WL 1923673 (D.Or. May 11, 2010)).

Several of these defects appear in PLN's fee petition. As a preliminary matter, Weber's two year associate, Hull, spent much of the time billed reviewing various emails and

FINDINGS AND RECOMMENDATION – Page 12

correspondences from, or discussing matters with, the other attorneys and paralegals involved in this matter.  With the exception of the preparation of discovery responses, her time is either duplicative of other attorneys' efforts or does not reflect substantive work on this case. Accordingly, 4.8 hours should be deducted from Hull's fee petition.  *See* Weber Decl. Ex. D (2/16/12, 3/12/12, 6/7/12, 6/12/12, 6/19/12, 6/20/12, 6/21/12, 7/4/12, 7/5/12, 7/6/12, 7/17/12, 7/23/12, 7/26/12, 7/27/12, 8/1/12 entries[4]).

Further, Chamberlain, Wing, McBride, and Wilkinson frequently block bill.  *See* Chamberlain Decl. Ex. 3, at 1-10.  The court may excuse this practice when the billing period is no more than three hours.  *See Sterling Savings Bank*, 2010 WL 3210855 at *5 (citing *Frevach Land Co. v. Multnomah Cnty., Dep't of Envtl. Servs., Land Use Planning Div.*, 2001 WL 34039133, *12 (D.Or. Dec. 18, 2001)). When Chamberlain, Wing, McBride, and Wilkinson billed for a group of tasks, they primarily did so in blocks of less than three hours; in fact, in most cases, they block billed for less than an hour.  *See* Chamberlain Decl. Ex. 3, at 1-10. Accordingly, to the extent that Chamberlain, Wing, McBride, and Wilkinson bill in blocks of less than three hours, the Court recommends allowing these entries.[5]  Conversely, to the extent that these entries exceed three hours, they should be stricken.  As a result, Chamberlain's hours should be reduced by 4.1 hours.  *See* Chamberlain Decl. Ex. 3, at 7 (6/19/2012 entry).

PLN's invoices that fail to adequately describe tasks also merit a reduction in fees.  For instance, some of PLN's billing entries include general descriptions without any mention of the subject matter involved.  A court may disallow hours dedicated to inadequately specified tasks

---

[4] For ease of reference, the Court will identify by billing date any entry that should be stricken.

[5] However, to the extent that PLN's block billing made it difficult to discern the amount of time allocated to a task for which another attorney also billed, the Court will strike the entire entry.

FINDINGS AND RECOMMENDATION – Page 13

because failing to provide such information makes it nearly impossible to ascertain the reasonableness of the time requested; however, a court may nonetheless allow hours for a task where the subject matter can be inferred from the surrounding time entries or other evidence in the record. *See Whitworth,* 2010 WL 1924505 at *7. Thus, this Court recommends excluding from the fee award those tasks that lack any explanation regarding their purpose or whose subject matter cannot be reasonably inferred. This results in a deduction of .7 hours from Blackman's fee and 5.2 hours from Wilkinson's fee. *See* Blackman Decl. Ex. B, at 1 (6/19/12 entry[6]); Chamberlain Decl. Ex. 3, at 1 (8/5/11, 8/8/11, 8/16/11 entries). Also, .4 hours of Weber's fees and .9 hours of Phillips' fees should be deducted. *See* Weber Decl. Ex. B, at 2 (9/2/11 entry[7]) & Ex. F (7/17/12 and 7/23/12 entries[8]).

In addition, PLN's billing entries include numerous duplicative expenditures, warranting further reductions. A court may deduct any time entries indicating that more than one attorney performed the same task. *See Whitworth,* 2010 WL 1924505 at *6. In cases of duplicative billing, the court generally excludes the more junior attorney's time if it has not been previously deducted. *See Malbco Holdings, LLC v. AMCO Ins. Co.*, 2010 WL 2572849, *12 (D.Or. June 22, 2010). While the Court acknowledges that some coordination was necessary between counsel, the amount of hours billed for mutual conferences, especially in light of PLN's

---

[6] It is unclear whether this billing entry even pertains to this lawsuit, as it was performed by an unidentified attorney and refers to an unknown party.

[7] The Court notes that this entry is duplicative and, for this additional reason, should be stricken. *Compare* Weber Decl. Ex. B, at 2 (9/2/11 entry), *with* Chamberlain Decl. Ex. 3, at 2 (9/2/11 entry).

[8] Because these entries are not adequately described, it is unclear whether the tasks billed for are also clerical in nature.

FINDINGS AND RECOMMENDATION – Page 14

representation that it already struck any redundant entries, are nonetheless excessive.[9] Accordingly, the hours billed by the least senior attorney for mutual conferences should be stricken from PLN's fee petition.  As such, Chamberlain's petition should be reduced by 12.6 hours.  *See* Chamberlain Decl. Ex. 3, at 1-10 (8/3/11, 9/1/11, 9/2/11, 9/19/11, 9/27/11, 12/13/11, 12/16/11, 2/13/12, 3/20/12, 5/1/12, 5/16/12, 5/22/12, 6/12/12, 6/13/12, 6/15/12, 6/19/12, 6/22/12, 6/28/12, 7/5/12, 7/13/12, 7/16/12, 7/18/12, 7/20/12, 7/30/12 entries).   For the same reason, Weber's petition should be reduced by .8 hours.  *See* Weber Decl. Ex. B, at 2 (6/19/12 entry).

Similarly, the Court finds that the hours spent drafting the complaint were excessive. With the exception of names and dates, the complaint that PLN filed in this case was virtually identical to the complaint filed in *Prison Legal News v. Columbia Cnty*.  PLN filed the complaint in that case on January 13, 2012; PLN filed the complaint in the present action approximately six months thereafter, on June 19, 2012.  Further, PLN concedes that it borrowed from the pleadings in the aforementioned case when drafting the complaint and proposed preliminary injunction in the present matter.  *See* Chamberlain Decl. ¶ 30.  Yet PLN's counsel collectively spent over 20[10] hours drafting, revising, or strategizing about the complaint after the initial pleading in *Prison Legal News v. Columbia Cnty*. had been filed.  *See* Weber Decl. Ex. B, at 2 (6/12/12 and 6/19/12 entries); Blackman Decl. Ex. B, at 1 (6/6/12 and 6/18/12 entries); Chamberlain Decl. Ex. 3, at 4-7 (2/7/12, 5/16/12, 5/22/12, 5/29/12, 6/3/12, 6/6/12, 6/10/12, 6/12/12, 6/15/12, 6/17/12, 6/18/12, 6/19/12 entries).  While time allocated for changing names and dates, as well as for editing, was

---

[9] Nevertheless, the Court declines to strike the duplicative billings for conferences between attorneys and paralegals because such conferences are reasonably necessary to ensure that the work delegated by attorneys to paralegals is properly performed.

[10] This total reflects hours that have not previously been stricken for some other reason.

FINDINGS AND RECOMMENDATION – Page 15

reasonable, billing for numerous conferences and multiple attorneys' work on a single document that was appropriated, in large part, from a complaint in another case is recrementitious.  A party is free to hire and pay as many attorneys as it wishes; nonetheless, that party cannot expect to shift the cost of these inefficiencies to its opponent.  *See Nat'l Warranty Ins. Co. v. Greenfield*, 2001 WL 34045734, *5 (D.Or. Feb. 8, 2011); *see also Malbco Holdings*, 2010 WL 2572849 at *12.  Under the circumstances of this case, the Court finds that a reduction is warranted for the substantial hours these attorneys billed arising out of the complaint after January 13, 2012. Accordingly, the 14 hours that Chamberlain spent on the complaint should be reduced overall by 25%; as such, 3.5 hours should be stricken from her invoices.  *See* Chamberlain Decl. Ex. 3, at 4-7 (2/7/12, 5/22/12, 5/29/12, 6/3/12, 6/6/12, 6/10/12, 6/17/12, 6/18/12 entries).  Further, the Court finds 2 hours to be a reasonable amount of time for Wing to spend strategizing and editing the complaint, especially in light of the fact that it was analogous to the one filed against Columbia County.  *See id.* at Ex. 3, at 5-7 (5/16/12, 5/22/12, 6/12/12, 6/15/12, 6/19/12 entries).  Thus, Wing's invoices should be reduced by 6 hours.

Moreover, PLN's invoices that include billing entries for clerical tasks should be omitted. Tasks that are secretarial or clerical in nature, such as proofreading, data entry, indexing, or assembling documents, are not compensable because they are overhead and thus already "reflected in the hourly billing rate."  *Frevach Land Co.*, 2001 WL 34039133 at *12.  Here, PLN's fee petition contains numerous entries that fall into this category; particularly, the investigation into UCJ's mail practices entailed copious hours of compiling evidence and documenting it into a spreadsheet.  While the Court accepts that the investigation was necessary to determine whether UCJ was enforcing a practice of censorship, as opposed to merely making mistakes or negligently mismanaging the mail, clerical tasks are simply not compensable

FINDINGS AND RECOMMENDATION – Page 16

pursuant to an attorney fee petition. This is especially appropriate given that this case was not litigated on the merits, rendering much of the evidence that PLN gathered though its investigation superfluous. The Court therefore recommends that Wilkinson's petition be reduced by 8.2 hours and McBride's petition be reduced by 35.7 hours. *See* Chamberlain Decl. Ex. 3, at 1-10 (7/21/11, 8/12/11, 8/17/11, 8/18/11, 8/22/11, 8/29/11, 8/31/11, 9/5/11, 9/19/11, 10/10/11, 10/11/11, 12/5/11, 12/6/11, 2/7/12, 2/27/12, 2/28/12, 3/7/12, 3/22/12, 4/3/12, 6/18/12, 6/27/12, 7/25/12 entries). Further, Phillips' petition should be reduced by 10.9 hours, Weber's petition should be reduced by 2.5 hours, and Blackman's petition should be reduced by .2 hours. *See* Weber Decl. Ex. B, at 1-2 (11/10/10, 7/1/11, 7/15/11, 9/3/11 entries) & Ex. D (7/5/12 and 7/27/12 entries) & Ex. F (7/18/12, 7/19/12, 7/23/12, 7/27/12, 8/1/12 entries); Blackman Decl. Ex. B, at 2 (6/20/12 and 6/28/12 entries).

In sum, after taking the above-listed deductions, the Court recommends awarding 42.7 hours of Chamberlain's time at $258 per hour ($11,016.60 total), 20 hours of Wing's time at $333 per hour ($6,660 total), 54.4 hours of Wilkinson's time at $125 per hour ($6,800 total), 14.4 hours of Weber's time at $312 per hour ($4,492.80 total), 6.2 hours of Hull's time at $182 per hour ($1,128.40 total), 12.4 hours of McBride's time at $90 per hour ($1,116 total), 1.6 hours of Blackman's time at $350 per hour ($560 total), and 2 hours of Phillips' time at $105 per hour ($210 total). Based on these calculations, the Court recommends a total attorney fee award of $31,983.80. I have also considered the factors outlined in *Kerr* and find that no adjustment is necessary.

III.    Costs

PLN seeks to recover $779.89 in costs; this amount includes filing fees, postage, a search fee, photocopies, and in-house printing. *See* Chamberlain Decl. ¶ 11. Costs are generally

FINDINGS AND RECOMMENDATION – Page 17

awarded to the prevailing party in a civil action as a matter of course unless the court directs

otherwise.  *See* Fed. R. Civ. R. 54(d); *see also* 42 U.S.C. § 1988.  The expenses which may be

taxed as costs are enumerated in 28 U.S.C. § 1920[11] and include any reasonable "out-of-pocket

expenses . . . that would normally be charged to a fee paying client." *Nat'l Warranty Ins.*, 2001

WL 34045734 at *9 (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

Here, defendants do not challenge PLN's bill of costs.  Further, the Court finds that the

requested costs all fall within the purview of 28 U.S.C. § 1920 and appear within PLN's billing

statements.  Therefore, the Court recommends awarding these costs in full.

## RECOMMENDATION

For the foregoing reasons, PLN's Motion for Award of Fees and Costs (doc. 22) should

be granted as follows: PLN should be awarded attorney fees in the reduced sum of $31,983.80

and costs in the amount of $779.89.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District

Judge for review.  Objections, if any, are due no later than fourteen days after the date this

Findings and Recommendation is filed.  If no objections are filed, review of the Findings and

Recommendation will go under advisement on that date.  If objections are filed, a response to the

---

[11] Specifically, this statute provides for recovery of the following: "(1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920.

FINDINGS AND RECOMMENDATION – Page 18

objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 27th day of February, 2013.


__/s/ Patricia Sullivan    _____
Patricia Sullivan
United States Magistrate Judge

FINDINGS AND RECOMMENDATION – Page 19